Mary Dale GERHARDT, Appellant,

v.

William C. WELSCH, Appellee.

No. 15864.

Court of Civil Appeals of Texas, San Antonio.

May 31, 1978.

Rehearing Denied July 19, 1978.

James R. Bass, San Antonio, for appellant.

Dan A. Naranjo, San Antonio, for appellee.

CADENA, Chief Justice.

Plaintiff, Mary Dale Gerhardt, appeals from a judgment dismissing her suit in which she sought partition of military retirement benefits being received by her former husband, William C. Welsch, defendant, and an accounting of, and recovery of, retirement benefits received by defendant in the past.

The parties were divorced in the State of Washington, where defendant, then a member of the military forces of the United States, was stationed at the time. The divorce decree rendered by the Washington court on October 30, 1970, adopted and approved a property settlement agreement executed by plaintiff and defendant. Neither the agreement nor the decree mentioned the military retirement benefits involved in this litigation.

Defendant became a member of the armed forces in October, 1952, and he and plaintiff were married in Texas on February 4,

1956. On the date of the Washington divorce decree, defendant had been a member of the armed forces for 18 years, having served 14 years, 8 months and 26 days while married to plaintiff. Defendant retired from the service, holding the rank of major, on November 1, 1972, and received his first retirement check on November 30, 1972.

The judgment below recites that defendant's "Plea in Bar and Abatement" are sustained and the plaintiff's cause of action is dismissed.

That portion of defendant's answer captioned "Plea in Bar and Abatement" prays that plaintiff's cause of action be dismissed or abated. Essentially, this portion of defendant's answer alleged:

1. At the time the divorce was granted, defendant had served in the armed forces only 18 years and was not, at that time, entitled to receive retirement benefits, since the applicable federal law requires at least 20 years' service as a condition precedent to eligibility for retirement benefits.

2. At the time the Washington divorce decree was rendered, the parties had no property rights or property interest in the retirement plan or retirement benefits.

3. Under *Davis v. Davis*, 495 S.W.2d 607 (Tex.Civ.App.—Dallas 1973, writ dism'd), and *Busby v. Busby*, 457 S.W.2d 551 (Tex. 1970), the interest of a service man in his military retirement benefits becomes a vested property right and subject to division as part of the community estate in a divorce action only when the person in the military service has, at or before the date of the divorce, served for the required period of time to entitle him to retire.

4. Under the terms of the property settlement agreement executed by the parties, plaintiff has no interest in the retirement benefits.

We do not comment on the propriety of an order which purports to sustain both a plea in bar, which would require a take-nothing judgment, and a plea in abatement, which would require abatement of plaintiff's suit, and follows such rulings with an order of dismissal. It should, perhaps, be pointed out that if a plea in abatement is sustained, questions reached by a plea in bar are not reached.

Neither party questions the jurisdiction of the Washington court to entertain the divorce action. Both parties concede that under applicable Washington statutes it was the duty of the court rendering the divorce decree to make a division of the property, both community and separate, of the parties. R.C.W. 26.09.080 (1973). Neither party questions the fact that under well settled principles of law and in obedience to the full faith and credit clause of the United States Constitution (U.S.C.A. art. IV, § 1) and the statute implementing that constitutional provision, Texas courts must give to the Washington decree that faith and credit which would be accorded to it by the courts of the State of Washington. *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). In order to do this, we must give to the Washington decree that conclusive effect given by Washington courts to the final judgments of courts of that state.

Since we must give to the Washington decree that force and effect which it would have in that state, the disposition of this case is controlled by the law of the State of Washington.[1]

Under Washington law, the parties to a divorce action become tenants in common of community property concerning which no disposition is made by the divorce

1. The parties have experienced some difficulty maintaining a consistent position on the question of applicable law. In the trial court plaintiff filed a motion that the court take judicial notice of Washington law. Defendant opposed this motion, insisting that Texas law was applicable. Perhaps because of the decisions in *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977) and *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.

1976), defendant in this court states that after further consideration he realizes that Washington law should be applied, while plaintiff, although maintaining she was entitled to judgment under either Washington or Texas law, has presented a brief which clearly leaves the impression that she would be more than happy if we decided this case according to the law of Texas.

decree. *Sears v. Rusden*, 39 Wash.2d 412, 235 P.2d 819, 822 (1951).

■ We first consider whether the interest in the retirement plan constituted, under Washington law, community property. If, under the law of Washington, such interest was the separate property of defendant, it is clear that the judgment below must be affirmed, since, as pointed out in *Sears*, separate property not disposed of by a decree of divorce remains the individual property of the party who owned it, as separate property, prior to the divorce. 235 P.2d at 822.

■ Defendant insists that under Washington law, as it existed on the date the divorce decree was entered, "unmatured" pension or retirement rights were not regarded as property capable of division upon dissolution of a marriage. In advancing this theory, defendant relies principally on *Roach v. Roach*, 72 Wash.2d 144, 432 P.2d 579 (1967), where, on appeal, the wife complained that the trial court, in dividing the property of the parties, failed to take into consideration the value of the pension earned by the husband while in the military service. The Washington Supreme Court, relying on *Morris v. Morris*, 69 Wash.Dec.2d 508, 419 P.2d 129 (1966), said that a military pension, which is subject to certain contingencies set out in the applicable federal statutes, "is not a fixed asset but is an emolument or economic advantage of office," characterizing it as "an income resource which should be considered by the court in fixing the amount of the alimony award." 432 P.2d at 579.

In *Morris*, the wife's principal contention was that the trial court had erred in characterizing the husband's retirement benefits as a gratuity from the government and, as such, the separate property of the husband. The Supreme Court of Washington said (419 P.2d at 130):

> We are inclined to agree with the [wife] as to characterization or legal classification respecting the pension. In *Loomis v. Loomis*, 47 Wash.2d 468, 479, 288 P.2d 235, 241 (1955), we noted in passing that a military pension 'is not in the nature of

"future earnings" but is an asset acquired during coverture.'

The Morris opinion, after noting, "it is not necessary at the present time to reach and dispose of the problem as to the appropriate legal characterization or classification which should be accorded military pensions," points out that under Washington law all of the property of divorce litigants, whether it be separate or community in nature, is subject to division by the divorce court, and awarded the wife an interest in the military retirement pension. 419 P.2d at 131.

It is clear that *Morris* does not hold that a military pension is not regarded as property subject to division upon dissolution of the marriage and that the *Morris* opinion, while declaring it unnecessary to classify a military pension as community or separate property, clearly expresses the inclination of the Washington Supreme Court to agree with the wife's contention that the trial court erred in characterizing a retirement pension as separate property.

Subsequent to *Roach*, but prior to the time the divorce in this case was granted, the Washington Supreme Court, in *Edwards v. Edwards*, 74 Wash.2d 286, 444 P.2d 703 (1968), said:

> The husband, reluctantly conceding, as he must, that the pension having been earned during the marriage is community property, or, in any event is an asset which the court can consider in making a division of the property or in [awarding] alimony, argues that . . . any semblance of fairness demands that he be awarded the full amount of the pension. [footnotes omitted].

In support of the statement that a military pension is community property, the *Edwards* opinion cites the *Morris* decision.

It is clear that at the time the divorce in question was granted in 1970 the Washington decisions did not support defendant's contention that an unmatured pension right was not considered to be property capable of division in a divorce proceeding. The *Roach* decision cannot be accorded per-

suasive weight in view of the later decision in *Edwards* and particularly in view of the fact that in *Payne v. Payne*, 82 Wash.2d 573, 512 P.2d 736, 737–38 (1973), the Washington Supreme Court characterized the statement in *Roach* on which defendant relies as "dicta" and added that in such dicta the Roach opinion "incorrectly construes the *Morris* holding." The Payne opinion continues (512 P.2d at 738):

> The statement in *Roach* that a military pension 'is not a fixed asset but is an emolument or economic advantage of office' does not preclude the court from treating certain aspects of that pension as property, regardless of the fact that there are inherent limitations that make it different from fixed assets. *Mora v. Mora*, 429 S.W.2d 660 (Tex.Civ.App.1968).
>
> . . .
>
> This construction of our cases is consistent with the interpretation given by other community property states. Courts today regard military retirement plans and retirement pay as a mode of employee compensation.

Nor do the Washington decisions involving "potential"[2] retirement benefits support defendant's contention. In *DeRevere v. DeRevere*, 5 Wash.App. 741, 491 P.2d 249 (1971), it was held that a husband's noncontributory retirement plan interest which would not mature into a "vested" right to payment of benefits unless and until he remained in the employment of his employer until he reached age 60 (an event which could occur only after the divorce was granted), constituted "[property to be divided upon dissolution of the marriage.] Hence, in the case at bar, even though it might appear that Mr. DeRevere's interest in the company retirement plan had not yet fully vested, such rights as he—*and the community composed of himself and wife*—did have at the time of the divorce were properly divisible *as property* by the court." 491 P.2d at 252 (emphasis added). While *DeRevere* was decided about a year after

the divorce in question here had been granted, all of the cases cited in support of the conclusion were decided prior to 1970.

In *Wilder v. Wilder*, 85 Wash.2d 364, 534 P.2d 1355, 1357 (1975), the Supreme Court of Washington said:

> Thus it is settled in this jurisdiction that a military pension is community property to the extent that community funds have been invested in it and that it is before the court for consideration in a dissolution proceeding. The defendant acknowledges this. He contends however that the court cannot consider such a pension unless the right to receive it has matured. He cites no Washington case to support this proposition but relies upon two cases decided in Texas. These are *Davis v. Davis*, 495 S.W.2d 607 (Tex.Civ.App.1973) (holding that a wife could not be awarded an interest in the pension rights of an Air Force officer who had served only 11 years because they had not vested), and *Miser v. Miser*, 475 S.W.2d 597 (Tex.Civ.App.1971) (holding that an enlisted man who had served 18½ years had a vested right in the pension he would be eligible to receive after 20 years). *An examination of the Texas cases will show that the courts in that state adopt a conservative view regarding the nature of pension rights and tend to take the position that pension rights do not vest and cannot be considered by a divorce court unless it is certain that they will mature.* [Emphasis added.]
>
> This court has not subscribed to the doctrine that a pension right does not vest until it is certain that benefits will be paid. Rather, we have said that an employee has a vested right with respect to pension benefits from the date of his employment, where a pension plan is in effect and is part of the compensation which he earns, . . . . *Bakenhus v. Seattle*, 48 Wash.2d 695, 296 P.2d 536 (1956), *Tembruell v. Seattle*, 64 Wash.2d 503, 392 P.2d 453 (1964).

2. The term "potential" is used to refer to those situations where the conditions precedent to payment of benefits, such as 20 years' service, have not been fulfilled at the time of divorce, so that there will be no enforceable right to payment until some time after the dissolution of the marriage.

The Washington court in *Wilder* has stated in clear and precise language that the courts of that state have not subscribed to the doctrine that "potential" or "unmatured" pension rights are not "vested rights." Significantly, the statement to the effect that an employee has a vested right in a retirement plan from the date of his employment is supported by citation of cases decided prior to 1970. These circumstances, together with the fact that the Washington court refused to follow the Texas decision applied in *Davis v. Davis*, 495 S.W.2d 607 (Tex.Civ.App.—Dallas 1973, writ dism'd),[3] clearly demonstrate that the law of Washington prior to 1970 was to the effect that a right to retirement benefits is a vested right prior to the time that the employee is entitled to payment of benefits.

Defendant points to the fact that at the time of the divorce an officer, who, unlike an enlisted man, was not bound to remain in the service for any period of time. This theory formed the basis for the decision by the Dallas Court of Civil Appeals in *Davis*. As already pointed out, the Washington Supreme Court criticized *Davis* as an example of the "conservative" approach which it said Texas courts were following at that time, and in *Cearley*, the Supreme Court of Texas referred to the distinction "as to retirement rights and procedures" applicable to officers and enlisted men as "an immaterial distinction." 544 S.W.2d at 665, n. 5.

It is true, as defendant says, that in *Wilder* the husband had only a little over a year to serve in order to complete the 20 years of service required for retirement. Here, defendant had about two years to serve. We do not believe the Washington courts would consider this difference significant in view of their clear commitment to the view that the right to retirement benefits becomes "vested on the date of employment." It is significant that the *Wilder* court, speaking of the possibility that the husband might leave the service before completing the required minimum period of service, thus abandoning his rights to a pension, said that the court "must take account of the community's investment in the pension system and determine whether, in the event the party entitled to the pension decides to abandon his rights, the community's contribution should nevertheless be considered an asset under his control and be balanced against other assets awarded to the other party."

Since we have concluded that at the time plaintiff and defendant were divorced the Washington law considered the unaccrued pension right to be community property, we need not discuss defendant's theory that plaintiff can prevail only if *Payne* and *Wilder* are given "retroactive" effect.

Defendant's argument that a decision declaring that the pension rights in this case are a part of the community assets would, in effect, allow plaintiff to attack collaterally the divorce decree rendered in 1970, is without merit. Under Washington law, the parties to a divorce action become tenants in common of community property not disposed of by the divorce decree. *Sears v. Rusden*, 39 Wash.2d 412, 235 P.2d 819, 822 (1951). If we have correctly determined that, under Washington law, the pension rights in question constituted community property, we must conclude that plaintiff and defendant became tenants in common of the community interest in such rights unless the Washington divorce decree in 1970 disposed of the interest of the parties in such rights. If the divorce decree did not dispose of the parties' interest in such community property, then we must accept the Washington law to the effect that the parties became tenants in common in such community interest, thus giving to the Washington divorce decree the same effect which would be given it by the courts of the State of Washington. If the interest in question was not disposed of by the decree of 1970, a subsequent judgment making disposition of such interest would in no way affect the validity of the 1970 judgment.

**3.** The decision in *Davis v. Davis* has been expressly disapproved by the Supreme Court of Texas. *Cearley v. Cearley*, 544 S.W.2d 661, 666 (1976).

It is impossible to reach the conclusion that the property agreement and the judgment approving and adopting such agreement disposed of the community interest in the pension plan. Neither the agreement nor the decree mentions the pension plan. Assuming that the agreement and decree dispose of the community interest in the pension plan, to whom was it awarded? Neither the decree nor the agreement awards it to the plaintiff or to the defendant. Defendant's reliance on *Sears* is misplaced. In *Sears*, the agreement contained a provision to the effect that the wife relinquished all "claims of any nature whatsoever to all community property acquired by the parties" except "that which has been specifically set off as awarded to her by this" agreement. The property settlement agreement in this case contains no such provision, and there is, therefore, no basis for holding that the agreement constitutes a relinquishment of plaintiff's interest in the pension plan. The inescapable conclusion is that neither the agreement nor the divorce decree awarded the community interest in the retirement benefits to either party. Under Washington law, then, the parties, as to such community interest, became tenants in common, with the right to subsequent partition.

Despite our conclusion that plaintiff is entitled to partition of the joint interest in the retirement benefits, we cannot here render the judgment which the trial court should have rendered. The record affirmatively discloses that defendant had been receiving the entire retirement benefit for approximately 4 years prior to the filing of this suit. The only indication of the amount received by defendant during those 4 years is that the amount received by defendant during such period varied from $600 per month to $760 per month. Plaintiff sought an accounting as to the amount of the money received by defendant, and the record before us furnishes no basis for a finding concerning the amount received by defendant during such 4-year period. It is, therefore, necessary to remand the case to the trial court so that a proper judgment may be entered.

The judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings not inconsistent with our holding to the effect that the interest in the retirement plan was, at the time of the divorce, community property not disposed of by the Washington decree.